IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**FILED**
JUL 14 2020
TIMOTHY M. O'BRIEN CLERK
By: _____ Deputy

Keith McDaniel, )
    Defendant, )
)
)
v                                                 ) Case No. 2:07cr20168-22-JWL
)
)
United States, )
    Plaintiff. )

**Emergency Motion for Reduction in Sentence Pursuant 3582 (c)(1)(A)(i)
Due to "Extraordinary or Compelling Reasons" Due to Coronavirus Pandemic**

Comes now, Keith McDaniel, pro se petitioner requesting that this court grant him time served on his sentence and immediate release from imprisonment due to his extremely high risk of contracting and succumbing to the COVID-19 virus. In support of his request, McDaniel explains his reasoning.

### COVID-19

According to the Center for Disease Control ("CDC"), those at high risk for severe illness from COVID-19 include [in part] people who live in a nursing home or long-term care facility [such as a prison], people of all ages with underlying medical conditions, particularly if not well-controlled, including people with chronic lung disease or moderate to severe asthma, and people who have serious heart conditions [including hypertension].

COVID-19 poses a serious risk to inmates and workers in detention facilities. Detention facilities, including jails, prisons, and other similar settings, have long been known to be associated with high transmission probabilities for infectious disease, including tuberculosis, MRSA (methicillin resistant staph aureus), and viral hepatitis.

A number of features of these facilities can heighten risk for exposure, acquisition, transmission, and clinical complications of these infectious diseases. They include physical/mechanical risks such as overcrowding, population density in close confinement, insufficient ventilation, shared toilets and showers, and lack of access to masks and gloves in some facilities.

(1)

In addition to the nature of the prison environment, prison and jail populations are also at additional risk due to high rates of chronic health conditions, substance use, mental health issues and, particularly in prisons, aging and chronically ill populations who may be vulnerable to more severe illnesses after infection, which can lead to death.

While every effort should be made to reduce exposure in detention facilities, this may be extremely difficult to achieve and sustain. It is therefore an urgent priority in this time of national public health emergency to reduce the number of persons in detention as much as is possible.

### Hypertension

The defendant has Hypertension and Grave's Disease; see **United States v. Sawicz, 08-cr-287(ARR)(E.D.N.Y)(April 10, 2020).** In Sawicz, he was a defendant who was vulnerable to the threat of contracting a severe case of COVID-19 because he had Hypertension, for which he takes prescribed Lisinopril and baby aspirin. The defendant also has Hypertension and takes AmLodipine, Atenolol, and Methimazole for Grave's Disease.

For those with Hypertension, "COVID-19 will cause a systemic reaction in the body in a patient that already has risk" because of poor heart health. This means the virus can attack multiple organ systems. (Dr. Maria Carolina).

U.S. Surgeon General Jerome Adams stated to "CBS Sunday Morning", noting "that he has high blood pressure", he has heart disease, and many black Americans are at higher risk for COVID-19. He also mentions "All doctors are saying: people who have high blood pressure and Hypertension are very at risk to dying when they get the COVID virus...". Also see **United States v. Carlos Curtis Crim No. 03-533 (BAH)**, a defendant who got immediate release because one of his conditions was Hypertension. He is an individual with numerous federal offenses arising out of a sex-trafficking operation involving minors. He was found guilty of six of nine charges on July 2, 2004 and was sentenced to six concurrent terms of life imprisonment. (The Defendant is a non-violent drug offender).

(2)

## Graves' Disease (Hyperthyroidism)

Graves' disease (known as Basedow disease in Europe) is the most common cause of thyrotoxicosis. It is an autoimmune disorder affecting the thyroid gland, characterized by an increase in synthesis and release of thyroid hormones. Graves' disease is much more common in women than in men (8:1), and its onset is usually between the ages of 20 and 40 years.

Patients with Graves' disease have an increased risk of other systemic autoimmune disorders, including Sjogren syndrome, celiac disease, pernicious anemia, Addison disease, alopecia areata, vitiligo, Type 1 diabetes mellitus, hypoparathyroidism, myasthemia gravis, and cardiomyopathy.

Regarding symptoms and signs, Thyrotoxicosis due to any cause produces nervousness, restlessness, heat intolerance, increased sweating, pruritus, fatigue, weakness, muscle cramps, frequent bowel movements or weight change (usually loss). There may be palpitations or angina pectoris.

Thyroid storm is characterized by abrupt onset or more florid symptoms of thyrotoxicosis, with some exacerbated symptoms and signs atypical of uncomplicated Graves' disease. Included are fever; marked weakness and muscle-wasting; extreme restlessness with emotional swings; confusion, psychosis, or ever coma; and hepatomegaly with mild jaundice. The patient may present with cardiovascular collapse and shock.

The government and the Court have to recognize Graves' disease is fatal without Covid.

According to the CDC Centers for Disease Control, compassionate release people with immune deficiencies are at high risk for Covid-19. Graves' disease is an immune deficiency...

## Courts Focused on the Risk of COVID-19, instead of the Defendant's continued incarceration

Terry Flenory and his brother Demetrious Flenory, were leaders of the BMF organization. By the time Flenory and his brother were indicted, their enterprise had distributed massive amounts of cocaine across several states. Flenory and his brother made millions of dollars and mingled with the rich and famous. At its height, BMF was estimated to employ in excess of 500 people. He was approved for home confinement on May 5, 2020. His underlying conditions were hypertension, hyperlipidemia, and obesity. **(Mr. McDaniel is one of the least culpable individuals in his conspiracy).** Gerardo Trevino received 120 months and the individual who he supplied, Thomas Humphrey, received 70 months; Mr. Humphrey supplied the entire conspiracy.

Also see: **United States v. Barber 2020 U.S. Dist LEXIS 83457 case no. 6:18-cr-00446-AA May 12 2020** where the government conceded that if an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19 that condition may satisfy the standard of extraordinary and compelling reasons.

All of the defendants current underlying conditions are identified by the CDC. According to the defendant's medical Bureau of Prisons Health Services Health Problems. He has hypertension, anemia, hyperthyroidism (Graves' Disease), Sinusitis and Headaches all considered according to the government to be extraordinary and compelling, as seen in **Barber.** Also see **U.S. v. Stone case No. 2:09-cr-20074** where the Court pointed out Asthma and Hypertension and acknowledged that according to the Centers for Disease Control and Prevention (CDC), those two ailments put an individual at higher risk for severe illness from COVID-19. Groups at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (May 14, 2020) https://www.cdc.gov/coronavirus/2019.ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed June 22 2020). The defendant also has health conditions in remission, anxiety disorder, and tachycardia. He also has resolved conditions, Pulpitis, chronic apical peridontitis, hyperlipidemia, chronic rhinitis and pre-diabetes. The defendant meets extraordinary and compelling circumstances according to the CDC. The defendant also needs to be released to get treatment for his Graves' Disease, that has him weak daily....

(4)

The Court can waive the exhaustion requirement in this case because the administrative exhaustion is not absolute; see **Washing v. Barr, 925 F.3d 109, 118 (2d Cir 2019).** Missouri has 11,000 COVID-19 cases. A court may waive an administrative exhaustion requirement "where [exhaustion] would be futile...where the administrative process would be incapable of granting adequate relief [or] where pursuing agency review would subject [the person seeking relief] to undue prejudice". Id at 118-19 citing McCarthy v. Madigan 503 U.S. 140, 146-48 superseded by statue on other grounds as recognized in Booth v. Churner 532 U.S. 731, 740 (2001). "[U]ndue delay if it in fact results in catastrophic health consequences" can justify waiving the administrative exhaustion requirement. The defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his Hypertension which justifies the waiver. See **U.S. v. Colvin No. 3:19cr179 (JBA) 2020 WL 1613943 at *2 (D CONN April 2, 2020).**

## CONCLUSION

The Court should find that extraordinary and compelling reasons warrant the defendant's release from prison **18 USC (c)(1)(A)(i).** The Sentencing Commission has issued a Policy Statement that defines "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual § 1B1. (U.S. Sentencing Commission 2018) **United States v. Bellamy No. 15-165(8)(JRT/LIB) 2019 WL 3340699at *2(D MINN July 25,2019).** While the defendant's Hypertension combined with COVID-19 does put him in particular vulnerability to complications from COVID-19 because of his Hypertension. Which constitutes an "extraordinary and compelling reason" for his release.

## 3553(A) FACTORS

The defendant has been disciplinary free for eight years and has taken over 50 programs including earning his GED and several drug and self-help programs and he works for the Captain's Office in a job that is given to an inmate with integrity and character. The defendant has been scored at a Low under recidivism rate and the defendant is well respected by staff.

## HOME PLAN

The defendant will live with his wife Allicia McDaniel in Raytown with their two daughters where the whole family works and everyone is responsible. The defendant has three daughters ages 24, 21, and 17. His 24 year old daughter is a school teacher with three daughters; his 21 year old daughter goes to college and works at the IRS; and his 17 year old daughter works at Jack N The Box and will be a senior at Raytown High School. The defendant's wife has worked at St. Luke's Hospital for seven years. The defendant is going to a loving, God-fearing home where eveyone works hard and his family is crime-free. The defendant has been offered several jobs upon his release. The defendant has served over 40% of his sentence which is a very lengthy sentence of 360 months, but with his Hypertension and continuing imprisonment now poses heightened risk to his health that the parties and the Court did not perceive when he was sentenced to 360 months in the Bureau of Prisons on September 25, 2009.

WHEREFORE the defendant prays that the honorable Court grant the defendant's motion for compassionate release pursuant to **18 U.S.C. § 3582 (c)(1)(A)(i)**.

Respectfully Submitted
This 8 day of June 2020

*Keith McDaniel*

Keith McDaniel
Reg. No. 11792-031
M.C.F.P.
P.O. Box 4000
Springfield, MO 65801